UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CANDYCE BOWLING | CIVIL ACTION NO. 21-cv-2346<br>Related to<br>CIVIL ACTION NO 20-cv-504 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| MARCUS BROWN ET AL | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM ORDER

**Facts and Proceedings**

This is a personal injury lawsuit filed by Candyce Bowling ("Plaintiff") against Marcus Brown, Southern Refrigerated Transport, Inc., and IQS Insurance Risk Retention Group, Inc. ("Defendants") arising out of a motor vehicle accident that occurred in Greenwood, Louisiana. Following the accident, Plaintiff sought treatment from various doctors and medical providers. A third-party litigation funding company, MedPort LA, LLC ("MedPort") funded that treatment by purchasing the accounts receivable of Plaintiff's medical providers.

Defendants issued a subpoena to MedPort to produce 23 categories of documents relating to treatment, billing, discounts, negotiations, and other types of documents related to Plaintiff or other plaintiffs/patients represented by Plaintiff's counsel. MedPort refused to produce the requested documents, so Defendants filed an **Emergency Motion to Compel. Doc. 1**. Defendants argue that the subpoenaed documents are relevant to the issues of causation, damages, bias, and credibility.

MedPort's response (Doc. 8) argues that the information sought would violate the confidential business relationship between MedPort and various medical providers. MedPort argues that it purchased accounts receivable, which means MedPort has the right to payment under the contract but bears the risk of nonpayment, partial payment, and the costs associated with obtaining payment. MedPort argues that, even though it purchased the accounts receivable at a discount from the medical providers, Plaintiff remains legally obligated to pay MedPort for the *full amount* of her medical bills. MedPort also argues that the real issue before the court is Defendants' attempts to discover MedPort's confidential, proprietary, and trade secret information.

Defendants' motion was originally filed in the District of Nevada. Following briefing and oral argument, that court transferred the discovery dispute to this court. Doc. 13. The discovery dispute was opened as a new civil action and assigned number 21-cv-2346.

In the related tort case, 20-cv-504, the court refused to quash an almost identical subpoena issued by Defendants to one of Plaintiff's treaters, Guardian Care, LLC ("Guardian"). The medical records produced in discovery showed that Plaintiff's treatment at Guardian was being funded by MedPort. The court agreed with Defendants that any agreements between Guardian and MedPort were relevant to determine whether the collateral source rule will apply to Plaintiff's recovery of medical expenses. The court found that the evidence would also be relevant to bias and credibility, because the evidence may show that Guardian and its doctors have a financial relationship with MedPort that would tend to prove Guardian's bias. The court did, however, sustain and modify some of

the requests in the subpoena to Guardian due to overbreadth and/or proportionality. See 20-cv-0504, Doc. 40.

The documents produced by Guardian are in the record as exhibits to Defendants' current motion. These include medical evaluations and medical bills. The bills include cover sheets by an organization named MoveDocs.com, LLC ("MoveDocs"). The cover sheets, for example Bates No. Med000050, explain that the providers "**SOLD**" the accounts to MedPort and that payment should be made to MedPort. Doc. 1-7 [Emphasis in original].

MedPort and MoveDocs are closely related. They share the same street address, the same named individual with authority to act, and the same registered agent for service. Doc. 9-1. The bills sent for MoveDocs state that MoveDocs "is now servicing all your needs (e.g. medical records, balance requests and *reductions*) with regard to the following account receivable(s) …." [Emphasis added]. Doc. 1-7 at p. 30.

**Law and Analysis**

**Collateral Source Rule**

Pursuant to Fed. R. Evid. 409, "[e]vidence of furnishing, promising to pay, or offering to pay medical, hospital, or similar expenses resulting from an injury is not admissible to prove liability for the injury." Collins v. Benton, 2021 WL 638116, *5 (E.D. La. 2021). Under Louisiana law, the collateral source rule provides that "an injured plaintiff's tort recovery may not be reduced[ ] because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution." Id. Under this doctrine, "the payments received from the independent source are not deducted from the

award the [plaintiff] would otherwise receive from the [tortfeasor]." Id. The underlying rationale is that "a tortfeasor should not benefit by a reduction in damages from outside benefits provided to the plaintiff." Id.

The Louisiana Supreme Court articulated an exception to the collateral source rule in Hoffman v. 21st Century North American Insurance Co., 209 So.3d 702, 704 (La. 2015). In that case, the plaintiff's attorney negotiated a discount on the client's medical bills. The court declined to apply the collateral source rule to the attorney-negotiated discount. Indeed, the court reasoned that "allowing the plaintiff to recover an amount for which he has not paid, and for which he has no obligation to pay, is at cross purposes with the basic principles of tort recovery in our Civil Code." The court concluded that a defendant cannot be "held responsible for any medical bills or services the plaintiff did not actually incur and which the plaintiff need not repay." Id.

The Louisiana Supreme Court articulated another exception to the collateral source rule in Simmons v. Cornerstone Investments, LLC, 282 So.3d 199 (La. 2019). In that case, the plaintiff suffered an injury while working for Cintas Corporation. The plaintiff's medical expenses totaled $24,435, but that amount was reduced to $18,435 (a $6,000 reduction) under the Louisiana Workers' Compensation Act. The legal issue was whether the plaintiff could recover the "written off" amount of $6,000.85. The court held that the $6,000 reduction entailed a "phantom charge" that the plaintiff never needed to pay back. For that reason, the Court held that the collateral source rule was inapplicable to the $6,000 phantom charge.

In Collins, supra, Chief Judge Brown denied a plaintiff's motion in limine seeking to bar the defendants from introducing the MedPort documentation into evidence at trial. The court found that the MedPort documents were relevant to a determination of the appropriate damages award if the jury concluded that the medical expenses were incurred in bad faith. The court also found the documents were admissible for the purpose of impeaching the credibility of Plaintiff's healthcare providers who would testify at trial. Id. at *7-8.

In McClain v. Sysco New Orleans, Civil Action No. 19-cv-1801 (E.D. La. 2019) (unpublished), Magistrate Judge Janis van Meerveld faced issues identical to those in this case. In that case, MedPort, which was referred to as a "medical-factoring company," purchased about $300,000 in accounts receivable from a neurosurgeon. Judge Meerveld exhaustively reviewed the relevant cases on this subject, some of which are in conflict. After reviewing the documentation and the caselaw, Judge Meerveld found that the documents sought were, in fact, relevant to the collateral source rule. She noted the affidavit of MedPort's principal Kenneth Fust, the same affidavit that was filed in this case, explained that when MedPort purchases accounts receivables for less than the billed amount, it is assigned the right to collect the full amount from the Plaintiff. See Doc. 8-2. The affidavit further provides that MedPort contracts with medical providers to purchase their receivables at a discount, and MedPort's profit is derived from the difference between the amount for which it purchased a receivable and the amount ultimately collected from the patient.

The undersigned agrees with and hereby adopts Judge Meerveld's thorough analysis and conclusions. The MedPort documents are relevant to a determination of whether the collateral source rule will apply. The MoveDocs bills referenced above tell plaintiffs and their attorneys who to call for reductions in MedPort's bills. The affidavit of general counsel admits that MedPort negotiates with attorneys. Although there is no attorney guarantee of payment, it seems that the sale of receivables to MedPort is an alternative to requiring that guarantee. This leads the court to question whether the parties involved are operating at arm's length. Common sense says that there must be at least some "understanding" between plaintiff's counsel and MedPort that some reduction in the medical expenses will be provided to plaintiff. Keeping the amount of that reduction secret from the court and opposing parties frustrates the litigation process and casts an unnecessary cloud over the medical expenses for purposes of settlement. Production of the agreements and the amounts evens the playing field and facilitates resolution.

**Bias, Credibility, and Causation**

The MedPort documents are also relevant to bias, credibility, and causation. MedPort might be inclined to make future purchases from medical providers whose accounts receivable result in better recovery, and this might give medical providers incentive to overtreat and give testimony that is favorable to a finding of causation and a bigger damages award. Those treating physicians have a financial interest in Plaintiff winning her case because a win for Plaintiff increases the likelihood that the provider will continue to receive referrals from MedPort. A jury could infer that the physicians overcharged Plaintiff in order to satisfy MedPort and continue to receive MedPort's

referrals. That physician is more likely to testify favorably on the issue of causation so that MedPort will provide other referrals and approve funding of treatment in the future for the next plaintiff or the next time a contract is negotiated. In this situation, the treating physicians "may have a substantial financial incentive to provide a favorable medical causation analysis." Collins v. Benton, 2020 WL 3618984, *7 (E.D. La. 2020).

**Confidentiality Concerns**

The affidavit of Marissa Stearns (Doc. 8-3), in-house counsel for MedPort, states that the agreements between MedPort and the medical providers all contain confidentiality clauses, and if the contracts were made public, "MedPort would be at a serious disadvantage in negotiations with other providers, *attorneys*, and insurance companies …." (Emphasis added). The undersigned finds that this concern is easily addressed by a protective order limiting disclosure to the parties in this case and for use only in this litigation.

**Conclusion**

For the foregoing reasons, Defendants' **Emergency Motion to Compel (Doc. 1)** is granted in part and denied in part. MedPort is directed to comply with the subpoena (Doc. 1-4) as follows:

Item 1:     MedPort shall produce.

Item 2:     Limited to documents in MedPort's possession related to Plaintiff and/or Plaintiff's counsel's retention of your service for the instant litigation. The rest of Item 2 is overbroad and not proportional to the needs of the case.

Items 3-14:  MedPort shall produce.

Item 15: MedPort's objection is sustained.

Item 16: MedPort's objections are sustained.

Item 17: MedPort's objections are sustained.

Item 18: This request is modified to remove "any Louisiana litigation" and replace that phrase with the name "Candyce Bowling."

Items 19-22: MedPort's objections are sustained.

Item 23: MedPort shall produce.

The information is subject to the following protective order: The information is deemed confidential and shall be labeled as such. Defendants shall use the documents produced only for the purpose of this litigation (and in no other litigation or proceeding), and disclosure shall be limited only to Defendants, their counsel, and others directly involved in the defense of this case (including experts and witnesses). A precondition of such disclosure is the execution of an agreement that acknowledges the confidentiality of the documents and agreement to maintain the documents in strict confidence.

All requests for fees or expenses in connection with the motion are denied.

The deadline for production is 14 days from the date of this order.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 18th day of August, 2021.

_____
Mark L. Hornsby
U.S. Magistrate Judge